1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8

9   KEITH EDWARD ADCOX,              )      Case No. 1:92-cv-5830-OWW
                                     )
10              Petitioner,          )      DEATH PENALTY CASE
                                     )
11       vs.                         )
                                     )      Order Regarding Petitioner's Motion
12   VINCENT CULLEN, Acting Warden   )      for Stay and Abeyance of Second
     of San Quentin State Prison,    )      Amended Petition (Doc. 140) and
13                                   )      Amendment of March 31, 2009 Order
                Respondent.          )      on Exhaustion (Doc. 139)
14   _____)

15

16          Petitioner Keith Edward Adcox ("Adcox"), a state prisoner facing capital

17   punishment, filed in federal court seeking habeas relief December 1, 1992.

18   Counsel was appointed to represent Adcox in his federal proceedings September

19   2, 1993.  Adcox filed his initial federal petition for writ of habeas corpus April 3,

20   1995, and filed an amended petition September 7, 1995.  Seven claims, and

21   portions of four other claims, were denied on the merits June 11, 1998.  Fifteen

22   claims were determined to be completely unexhausted, and six claims were

23   found to be partially unexhausted.  The proceedings were subsequently held in

24   abeyance pending the exhaustion of state remedies.  Adcox filed his state

25   exhaustion petition October 8, 1998.

26          While the matter was pending state exhaustion, lead counsel J. Jeffries

1   Goodwin moved to withdraw, and the Federal Defender for the Eastern District

2   of  California, Capital Habeas Unit, was appointed.  The California Supreme

3   Court summarily denied Adcox's state exhaustion petition, both on the merits

4   and as untimely, January 3, 2007.  Upon resumption of the federal proceedings,

5   Wendy Peoples was substituted as co-counsel in place of Eric Fogderude.  Adcox

6   filed his second amended petition for writ of habeas corpus February 28, 2008.

7   Respondent Vincent Cullen ("the Warden") filed an answer January 26, 2009.

8       The parties filed a Joint Statement on Exhaustion February 25, 2009,

9   agreeing that six claims or subclaims were unexhausted.  (Claims V(A)(4)-(6); VI;

10  XVI; XX(A)(2)(a), (b), (c)(iii), (d)(i)-(iii), (g); XLIII; and XLIV.)  The parties did not

11  agree about the exhaustion status of another ten claims or subclaims.  An order

12  on exhaustion was issued March 31, 2009, finding the ten claims or subclaims

13  where the parties did not agree about the exhaustion status to be exhausted.

14  Adcox filed his second motion for stay and abeyance May 29, 2009, the Warden

15  filed an opposition to stay and abeyance June 26, 2009, and Adcox filed a reply

16  July 10, 2009.

17      While Adcox's second motion for stay and abeyance was pending, he filed

18  a fourth state habeas petition (case number S180912) with the California Supreme

19  Court on March 12, 2010, presenting Claims V(A)(4), (5) and (6), XVI, XX(A)(2)(a),

20  (b), (c), (d), and (g); XX(A)(3), and XLIII; as well as three claims which were not

21  included in the second amended federal petition - cumulative error from the

22  prosecutor's misconduct, cumulative error from all asserted claims, and a juror

23  misconduct claim asserting the misuse of extraneous information.  Claims VI and

24  XLIV, which the parties had agreed were unexhausted, were not presented to the

25  state court in Adcox's fourth state habeas petition.  The California Supreme Court

26  directed that an informal response to the fourth state petition, which is

2

1   anticipated to be filed by December, 2010.  Concurrent with filing his fourth state

2   habeas petition, Adcox filed in this court a notice of supplemental authority

3   asserting a Ninth Circuit case issued March 5, 2010, expressly held that

4   amendments to a federal habeas petition filed prior to enactment of the AEDPA

5   is not subject to the one-year statute of limitations, even when it is amended after

6   the AEDPA's effective date.  *See Smith v. Mahoney*, 596 F.3d 1133, 1149 (9th Cir.

7   2010).

8

9   Claim XLIII - Unconstitutional Delay

10          Adcox asserts the factual predicate for this claim only came into existence

11   when the California Supreme Court failed to timely dispose of his direct appeal

12   and habeas petitions and denied relief.  Adcox asserts the nearly quarter century

13   of delay in his proceedings have resulted in the loss of potentially exculpatory

14   and/or mitigating evidence, violated due process, and that his execution now

15   would be cruel and unusual punishment.  Adcox alleges he has been prejudiced

16   by the deaths of numerous witnesses who have died without his being able to

17   preserve their testimony, and that documentary evidence has been lost or

18   destroyed.

19          The Warden contends Adcox could have raised this claim at numerous

20   points in the past: when his direct appeal was final in 1989; prior to the denials of

21   his first or second state habeas petitions in 1992; before the exhaustion order on

22   his federal petition in 1998; or during the pendency of his third state habeas

23   petition from 1998 to 2007.[1]  The Warden asserts Adcox has not shown good

24

25          [1] Adcox was sentenced to death on July 11, 1983.  His direct appeal was final
    on denial of his certiorari petition, less than seven years later on March 19, 1990.  His
26   first two state habeas petitions were denied July 15, 1992, a total of nine years after

3

1  cause for failing to exhaust this claim previously, that the claim is not supported

2  by existing federal law and so would be barred under *Teague v. Lane*, 489 U.S. 288

3  (1989), and that no loss of evidence which would have a harmful or injurious

4  effect has been shown.

5      The Warden denies the proceedings to review Adcox's death sentence

6  have been unreasonably or excessively delayed, alleging the delay due to the

7  automatic appeal was reasonable, and that all other proceedings were voluntarily

8  instituted by Adcox.  The Warden contends, in light of Adcox's failure to exhaust

9  this claim, that there is insufficient information on which to say whether certain

10  witnesses have died during the pendency of the proceedings, whether those

11  witnesses (or others who have died) could have provided material information or

12  testimony, or whether records have been lost.

13  *Conclusion*

14      The California Supreme Court's review of Adcox's direct appeal and first

15  round of state habeas lasted nine years.  Adcox took six years to file his federal

16  petition and state exhaustion petition.  The California Supreme Court's denial of

17  the state exhaustion petition occurred about eight years later.  Adcox took over a

18  year to file his amended federal petition.

19      Lengthy incarceration on death row during the pendency of capital

20  appeals does not violate the Constitution's prohibition against cruel and unusual

21  punishment.  *McKenzie v. Day*, 57 F.3d 1493, 1494 (9th Cir. 1995) (en banc); *see also*

22  *Smith v. Mahoney, supra*, 596 F.3d at 1153 (rejecting same claim under *Teague*).

23

24  he was sentenced.  His first filing in federal court was December 1, 1992, his initial
    federal petition was filed April 3, 1995, and amended five months later on

25  September 7, 1995, twelve years after sentencing.  His third state (exhaustion)
    petition was filed October 8, 1998, over fifteen years after sentencing, and was

26  denied January 9, 2007, twenty-three and a half years after sentencing.

1   Although Adcox raises this claim in his initial federal proceedings, unlike

2   McKenzie's claim which was raised in a subsequent petition just prior to his

3   scheduled execution, the reasons for rejecting the claim remain the same.  "A

4   defendant must not be penalized for pursuing his constitutional rights, but he

5   also should not be able to benefit from the ultimately unsuccessful pursuit of

6   those rights."  *McKenzie v. Day*, 57 F.3d 1461, 1466 (9th Cir. 1995) (panel opinion

7   denying stay of execution).  Claim XLIII is denied on the merits.

8

9   **Claims as to which some legal grounds are unexhausted**

10       Two of the claims agreed by the parties to contain some unexhausted legal

11   grounds were previously denied on the merits.  *See* June 11, 1998 Memorandum

12   and Order Regarding Dismissal, Exhaustion and Abeyance (Doc. No. 75).  The

13   portion of Claim III asserting an Equal Protection violation from the denial of a

14   change of venue, and Claim XXV, regarding the penalty instructions on age,

15   agreed to be unexhausted "to the extent it relied on constitutional provisions

16   other than the Eighth Amendment," were previously denied on the merits.

17   Adcox states Claims III and XXV were retained in his second amended petition to

18   avoid possible confusion and to preserve possible appellate review.  Abeyance is

19   not required for these claims.

20

21   **Amendment of March 31, 2009 Exhaustion Order**

22   Claim V(A)(6) - Failure to Disclose Second Side of Tape of Tillery Interview

23       Adcox argues Tillery's earliest statements about the shooting are pivotal

24   since her testimony helped establish that the killing was intentional and that

25   Adcox was the shooter.  Adcox asserts the interview reveals Tillery's confusion

26   about who said what, that it would have supported the defense theory that there

was never a plan to murder the victim, and that it could have effectively impeached her testimony, calling into question the prosecution's theory about how the shooting occurred. Adcox contends the suppressed evidence also was relevant to sentencing, as it would likely have produced lingering doubt about his involvement in the murder, and shown the favorable treatment given to Tillery by the prosecution.

The Warden asserts Adcox was on notice that there was more to the interview than was reflected on the transcript, since a report of the same interview reveals significantly more content than is reflected on the transcript, and the transcript ends in the middle of a sentence, suggesting there was more to the interview. The Warden observes the complete tape was obtained through informal discovery, but that Adcox provides no reason why informal discovery was not, or could not have been, pursued earlier. Also, the Warden suggests it would appear Adcox will be permitted to rely on the second side of the tape to support his claim that Tillery was intimidated into testifying as she did.

Adcox replies he had no reason to suspect that the interview with Tillery had not been fully transcribed and provided to trial counsel. Adcox contests the Warden's description of the transcript as ending mid-sentence, asserting it ends mid-page with Tillery stating "I want to go home. (whispered) (further inaudible)." This follows an announcement by the DA Investigator that he was "done" with the questioning, and appears to be nothing more than quiet conversation occurring before Tillery was escorted from the interrogation room. Adcox contends the belief this was the end of the interview is reinforced by the document stamp which appears only on that page, indicating it was the conclusion of the document. Adcox asserts reasonable persons would not have realized the transcript was incomplete.

1    The Warden contends this claim is without merit because the allegedly

2  new information is not material.  Adcox's argument, based on the second side of

3  the tape, that Tillery said "they" shot Orozco, does not show that Love was the

4  actual shooter nor exculpate Adcox, and is not significantly different from other

5  statements Tillery made.  The Warden observes Adcox testified he told Tillery

6  that he had shot the victim, as well as described how Love shot him.  The

7  Warden asserts that impeachment of Tillery on this point would have been

8  immaterial.

9    Adcox asserts the tape recording was obtained  through state court

10  discovery, which was not authorized until March 2004, and after learning

11  through informal discovery that the tape recording was in the possession of the

12  Tuolumne County Sheriff's department.  Adcox claims it was a complete surprise

13  to learn an entire side of the tape had not previously been transcribed.  The

14  Warden contends the second side of the taped interview does not contain

15  statements which significantly differ from Tillery's other statements or her

16  testimony, and contains no threats which could have influenced Tillery.

17

18  *Conclusion*

19    The submitted briefs of the parties regarding abeyance indicated their

20  agreement that this claim was unexhausted, and that conclusion was adopted in

21  the March 31, 2009 exhaustion order.  Subsequent review of the record reveals

22  that conclusion is erroneous.  This claim of prosecutorial misconduct was

23  presented in Claim V of Adcox's amended federal petition filed September 7,

24  1995.   The tape recording and transcript are admissible under *Vasquez v. Hillery*,

25  474 U.S. 254 (1986), as additional evidence in support of the petition.  Claim

26  V(A)(6) is exhausted.

1    Claim XVI - Ineffective Assistance of Appellate Counsel

2         Claim XVI, regarding ineffective assistance of appellate counsel, was

3    agreed to be partially unexhausted with respect to Adcox's "rights to Due

4    Process, Equal Protection and to present an affirmative appeal, insofar as it was

5    related to Claim XX, ineffective assistance of counsel, except for allegations

6    relating to subclaim XX(A)(2)(c)(ii) (Guidice's failure to adequately cross-examine

7    prosecution witness Jerry Chisum).  The Warden contends Adcox does not

8    attempt to justify his failure to exhaust this claim or to show that it has merit.

9    Thus, the Warden asserts Adcox should not be permitted a further stay to

10   exhaust this claim.

11

12   *Conclusion*

13        The submitted briefs of the parties regarding abeyance indicated their

14   agreement that certain legal bases for this claim were unexhausted.  Review of

15   the record in these proceedings reveal that conclusion is erroneous.  This claim of

16   ineffective assistance of appellate counsel was presented to the state court in

17   Adcox's third (exhaustion) petition, filed October 8, 1998, as Claim XIV, and

18   included violations under the rights of Due Process, Equal Protection, and to

19   present an affirmative appeal.  Claim XVI is exhausted.

20

21   **The Parties' Arguments Regarding Stay and Abeyance**[2]

22        Adcox argues *Rhines v. Weber*, 544 U.S. 269 (2005), supports a stay of

23   federal habeas proceedings on a petition containing unexhausted claims where

24   the petitioner has good cause for his failure to exhaust, his unexhausted claims

25   _____

26   [2] These arguments were submitted in these proceedings before the Ninth
     Circuit issued *Smith v. Mahoney*, 596 F.3d 1133 (9th Cir. 2010) (*see* discussion below).

8

are potentially meritorious, and there is no indication he has been intentionally dilatory. *Id.* at 278. Adcox asserts he meets each of the requirements from *Rhines*: first, there is good cause for his failure to exhaust because changes in state law have only recently allowed discovery of the facts supporting the unexhausted claims; second, the unexhausted claims have sufficient merit to justify stay and abeyance; and third, he has not engaged in intentionally dilatory litigation tactics which would justify denial of a stay. Adcox concedes it is somewhat unusual for a second round of abeyance to be ordered by a district court, but contends it has happened in other capital cases. Adcox further asserts the lack of a stay could result in his losing the right to federal review of his unexhausted claims, and issuing a stay will serve the legitimate interests of this Court and the state courts.

The Warden opposes further stay and abeyance, arguing that stay and abeyance is only available in limited circumstances and should be refused where the unexhausted claims are plainly meritless. *Rhines*, 544 U.S. at 277. The Warden asserts the newly-discovered evidence on which Adcox's request for abeyance is based could have been discovered with reasonable diligence and the proffered new information adds little to the claims. Further, the Warden asserts the claims based on new facts are barred by the one-year AEDPA statute of limitations because they are not based on the "same core of operative facts" as any properly-raised claim. *See Mayle v. Felix*, 545 U.S. 644 (2005).

Adcox replies that *Rhines* only requires a single meritorious claim to justify abeyance, so requiring briefing and consideration of why every unexhausted claim was not raised in the prior proceeding and whether it has potential merit is an unnecessary expenditure of resources. Adcox argues that if there is justification for staying the federal proceedings based on a single claim, no genuine purpose is served to determine whether the stay would be justified for

9

1    other claims.

2

3    **Newly Discovered Evidence**

4           Adcox asserts Claims V(A)(4) and (5), alleging prosecutorial misconduct,

5    are based on facts that were only recently discovered after obtaining and

6    reviewing the transcript from co-defendant Howard Love's trial.  Adcox claims

7    neither he, nor his attorneys, had any reason to think the transcript from Love's

8    trial would reveal the basis for a constitutional claim in his case.  The transcript

9    was not available from prior counsel, the trial court, the appellate court, or the

10   state archive, but was eventually obtained by tracking down the retired court

11   reporter.

12          *Smith v. Mahoney*, 596 F.3d 1133 (9th Cir. 2010) held the one-year AEDPA

13   statute of limitations does not apply to post-AEDPA amendments if the petition

14   was filed before the effective date of the AEDPA.  *Id.* at 1148.  Similarly, *Smith*

15   found the relation-back doctrine, applied to habeas petition amendments in

16   *Mayle v. Felix*, 545 U.S. 644 (2005), does not apply to amendments of petitions that

17   were filed before the AEDPA was enacted.  The Ninth Circuit observed that the

18   petition at issue in *Mayle* was filed after the AEDPA's effective date and

19   concluded that the Supreme Court's interpretation of the relation-back doctrine

20   there was resolved in the context of the AEDPA's intents and constraints.  *Id.* at

21   1149-1150.

22          Adcox argued that *Rhines v. Weber, supra*, 544 U.S. 269, provides the

23   standard for granting abeyance of his second amended federal habeas petition.

24   However, under the holding of *Smith v. Mahoney*, like the relation-back doctrine

25   in *Mayle*, the standard in *Rhines* is not applicable to this case.  The petition at

26   issue in *Rhines* also was subject to the AEDPA, as was the petition in *Mayle*, so the

1   standard from *Rhines* does not apply to Adcox's pre-AEDPA petition.

2          Prior to the enactment of the AEDPA, *McCleskey v. Zant*, 499 U.S. 467 (1991)

3   set the standard regarding the showing a petitioner must make to avoid abuse of

4   the writ.  Once the government met their burden of pleading a petitioner's abuse

5   of the writ (by showing the claims now raised were not in a previous habeas

6   petition), the burden shifts to the petitioner to show cause for the failure to raise

7   an issue and actual prejudice resulting from the errors complained of.  *Id.* at 494

8   (applying the standard from procedural default cases to instances of abuse of the

9   writ).  Cause "requires the petitioner to show that 'some objective factor external

10  to the defense impeded counsel's efforts' to raise the claim."  *Id.* at 493 (citing

11  *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Objective factors which constitute

12  cause include governmental interference, the reasonable unavailability of a

13  factual or legal basis for the claim, or constitutional ineffective assistance of

14  counsel.  *McCleskey*, 499 U.S. at 494.  If a petitioner cannot establish cause, the

15  court can still excuse failure to raise the claims in an earlier petition if the

16  petitioner can show that dismissal of the claim will result in a fundamental

17  miscarriage of justice – the conviction of an innocent person.  *McClesky*, 499 U.S.

18  at 494.

19         The doctrines of procedural default and abuse of the writ are both

20  concerned with the significant costs of federal habeas corpus review, especially

21  regarding the finality of state convictions.  *McCleskey*, 499 U.S. at 490-491.  When

22  a habeas petitioner obtains a new trial, the "erosion of memory" and "dispersion

23  of witnesses" prejudice the government and diminish the chances of a reliable

24  criminal adjudication.  *Id.* at 491.  Federal habeas review of state convictions

25  frustrate "the States' sovereign power to punish offenders and their good-faith

26  attempts to honor constitutional rights."  *Id.*  Habeas corpus has further costs: it

1   burdens scarce federal judicial resources; it threatens the capacity of the system

2   to resolve primary disputes; and it may give litigants incentives to withhold

3   claims for manipulative purposes or disincentives to present claims when

4   evidence is fresh.  *Id.* at 491-492.

5        "If collateral review of a conviction extends the ordeal of trial for both

6   society and the accused, the ordeal worsens during subsequent collateral

7   proceedings."  *McCleskey*, 499 U.S. at 492 (citing *Engle v. Isaac*, 456 U.S. 107, 126-

8   127 (1982)).  If the review of a conviction in the first round of federal habeas

9   offends federalism and comity and stretches resources, examination of new

10  claims raised in a second or subsequent petition increases the offense to

11  federalism and comity and spreads resources thinner still.  *Id.*  The doctrines of

12  procedural default and abuse of the writ impose on petitioners a burden of

13  reasonable compliance with procedures designed to discourage baseless claims

14  and to keep the system open for valid claims.  Both abuse of the writ and

15  procedural default doctrines are designed to vindicate the State's interest in the

16  finality of its criminal judgments and to lessen the injury to a State from

17  reexamination of a state conviction on a ground that the State did not have the

18  opportunity to address the claim at a prior, appropriate time.  *Id.* at 493.

19

20  Claim V(A)(4) - Prosecutorial Misconduct: Examination of Criminalist Chisum

21        In the opening statement at Adcox's trial, the prosecutor maintained the

22  victim Orozco had been shot from a distance of 30 feet, but on direct examination

23  Chisum's opinion was that the fatal shot was fired from a distance of about eight

24  feet.  The prosecutor used Chisum's testimony to vigorously argue that Adcox's

25  account of the events was false.  Months later, at Howard Love's trial, the

26  prosecutor elicited testimony from Chisum asserting the evidence permitted two

1    theories about where the shooter was positioned, but stating the evidence

2    favored the account consistent with Adcox's testimony.

3        By failing to elicit Chisum 's opinion that the crime occurred in a manner

4    consistent with Adcox's testimony, Adcox asserts the prosecutor failed to correct

5    misleading testimony, which along with the use of inconsistent theories at the

6    two trials, violated Adcox's rights.  Adcox contends that in light of the jury's

7    struggle over whether to credit his testimony, the prosecutor's reliance on

8    misleading testimony that contradicted his account of the crime had a substantial

9    and injurious effect on the verdicts at both stages of the trial.

10        Adcox's counsel assert the transcript of the testimony of criminalist Jerry

11    Chisum from Love's trial was not available from the Court of Appeal in February

12    2007.  The Warden contends the Court of Appeal did have the transcript during

13    Love's appeal in 1984-85, and that a copy of the transcript has been in the

14    possession of the Attorney General's Office since 1984.  The Warden asserts

15    reasonable diligence required Adcox to request a copy from the Attorney General

16    if the transcript was not available from the Court of Appeal.  Regardless, the

17    Warden argues that Chisum's testimony at Love's trial is inconsequential to the

18    asserted claim, and that Chisum's testimony from Adcox's preliminary hearing

19    already provided support for the asserted claim.  The Warden contends this

20    claim lacks substance because it only shows a good faith uncertainty as to the

21    exact place from which the fatal shot was fired, and regardless of whether the

22    shot was fired from eight feet away or from 15 to 20 feet away, either place is

23    inconsistent with Adcox's testimony.  Further, the Warden asserts it is likely

24    Adcox will be permitted to present Chisum's testimony from Love's trial in

25    support of his claim asserting ineffective assistance of counsel with respect to the

26    handling of Chisum's testimony.

1    Adcox replies that Chisum's testimony about the distance between the

2   shooter and the victim was extremely important, because if the jury credited it,

3   Adcox's account of the crime was rendered implausible and the jury's finding on

4   Adcox's credibility was critical to his defense.  Adcox asserts he cannot be faulted

5   for failing to earlier secure the Love transcript, as he had no reason to suspect

6   Chisum would have retreated from the opinion expressed at his trial.  Further,

7   Adcox contends that state procedures require the existence of triggering facts

8   before an investigation may be conducted, so counsel for Adcox on his state

9   appeals were under no duty to obtain the Love transcript.

10    The Warden argues this claim is without merit because Chisum was

11   questioned by both the prosecution and defense on the exact point about which

12   Adcox complains.  Chisum testified he changed his opinion regarding the

13   distance from which the fatal shot was fired based on his examination of the

14   victim's hat and test shots fired with Adcox's gun and ammunition.  Further, the

15   Warden denies that Chisum's testimony at Love's trial was in any way

16   inconsistent with his testimony at Adcox's trial, and denies that the prosecutor

17   relied on a different theory regarding the distance at Love's trial.  The Warden

18   asserts the prosecutor's factual theories were controlled by the evidence available

19   at the time and denies any bad faith or misconduct.

20

21   Claim V(A)(5) - Prosecutorial Misconduct: Theory re: the Victim's Wallet

22    At Adcox's trial, the prosecutor attempted to establish that Adcox was in

23   possession of the victim's wallet, encouraging the jury to infer from that fact that

24   Adcox's account of the crime was fabricated.  Adcox alleges the prosecutor

25   switched tactics at Love's trial and argued, consistent with Adcox's account, that

26   Love was the one who removed the victim's wallet.  Adcox asserts this use of

14

1    inconsistent theories violated his rights, and given the importance to his defense

2    of the jury's belief in his testimony, the prosecutor's manipulation of the evidence

3    had a substantial and injurious influence on the verdicts.

4         The Warden asserts this claim lacks substance, as the prosecutor did not

5    pursue inconsistent theories about who had the victim's wallet after the shooting,

6    but consistently held to the position that Love took the wallet from the victim

7    because Adcox did not want to touch the body, but that Love gave the wallet to

8    Adcox, who then removed the money and discarded the wallet.  This was

9    consistent with Adcox's testimony that he received the wallet from Love, and is

10   consistent with the evidence about which Adcox now complains.  The Warden

11   contends the record refutes the factual predicate of this claim and precludes any

12   finding of prejudice, and that Adcox has failed to show good cause for not

13   exhausting this claim earlier.

14

15        To avoid dismissal of these claims due to abuse of the writ, Adcox must

16   show that counsel's efforts' to raise the claims were impeded by an objective

17   factor external to the defense: e.g., governmental interference, the reasonable

18   unavailability of a factual or legal basis for the claims, or constitutional ineffective

19   assistance of counsel.  If an external impediment cannot be shown, the failure to

20   raise the claims in an earlier petition can still be excused if Adcox can show that

21   dismissal of the claims will result in a fundamental miscarriage of justice – i.e.,

22   affirming the conviction of an innocent person.

23        Adcox presented Claims V(A)(4) and (5) for the first time in his amended

24   federal petition filed February 28, 2008.  The factual predicate for these claims

25   were contained in a public court record.  Although Adcox asserts the transcript

26   from Love's trial was not available from the Court of Appeal in February 2007, it

1  was able to be obtained from the court reporter, and the Warden contends the

2  California Attorney General has possessed a copy of the transcript since 1984.

3       Adcox has failed to show his efforts to raise these claims were impeded by

4  an objective factor external to the defense.  Adcox's arguments that he had no

5  reason to suspect Chisum would have retreated from the opinion he expressed at

6  Adcox's trial, and that state procedures require the existence of triggering facts

7  before an investigation may be conducted, so his state appellate counsel were

8  under no duty to obtain the Love trial transcript, indicate his counsel was not

9  ineffective for failing to raise these claims.  Also, Adcox has failed to show the

10 Love trial transcript was unavailable due to governmental interference or some

11 other factor external to the defense.   Finally, Adcox has not shown that dismissal

12 of these claims will result in a fundamental miscarriage of justice – i.e., affirming

13 the conviction of an innocent person.

14

15 *Conclusion*

16      Since the government met their burden of pleading abuse of the writ by

17 asserting these claims were not in Adcox's previous habeas petition, the burden

18 shifted to Adcox to show cause and actual prejudice.  Adcox has failed to show

19 cause, or some objective factor external to the defense which impeded counsel's

20 efforts' to raise these claims.  Claims V(A)(4) and (5) are dismissed under abuse

21 of the writ.

22

23 **New Ineffective Assistance of Counsel Claims**

24      Adcox presented these claims for the first time in his 2008 amended federal

25 petition.  The parties agree these claims have not been presented to the state

26 court.

1    Claim XX(A) - ineffective assistance of counsel at guilt phase:

2        a.       Subclaim (2)(a) - Guidice's failure to adequately voir dire re: the

3                 victim's church membership;

4        b.       Subclaim (2)(b) - Guidice's failure to raise the conflict by Vanover;

5        c.       Subclaim (2)(c)(iii) - Guidice's failure to elicit on cross examination of

6                 Michael Adcox his statement of that he observed burn marks on

7                 Love's face shortly after the shooting;

8        d.       Subclaim (2)(d)(i)-(iii) - Guidice's failure to present evidence: (i)

9                 consistent with the defense theory from defense investigator Bob

10                Heitman regarding the statement by Richard Carr that Love

11                admitted shooting the victim; (ii) from Rhonda Voorheis regarding

12                Tillery's reputation as a liar; and (iii) regarding Love's flight after the

13                crime;

14       e.       Subclaim (2)(g) - Guidice's failure to request a poll of the jury

15                regarding their potential exposure to newspaper articles about the

16                case;

17       f.       Subclaim (3) - cumulative impact of errors by Lamb and Guidice.

18

19           The Warden asserts none of these claims are prejudicial.   The Warden

20   contends, regarding claim (2)(c)(iii), Michael Adcox's statement about burn

21   marks on Love's  "cheeks and forehead" are not consistent with having fired a

22   modern small-bore rifle like the one used to shoot the victim, disputing Adcox's

23   contrary allegation in his petition at page 120.  The Warden states, regarding

24   claim (2)(d)(i)-(iii), that the testimony of both the defense investigator and Carr

25   revealed that Love admitted shooting the victim; that Tillery's veracity was

26   attacked by other means making this evidence cumulative as well as moot since

1  Adcox testified almost everything in Tillery's testimony was true; and that there

2  was ample evidence Adcox, Love and Tillery fled after the murder, but the fact

3  Love "eluded capture longer" does not show he had more consciousness of guilt

4  than Adcox.

5        The Warden asserts, regarding Claim (2)(g), the California Supreme Court

6  on direct appeal found no reason to believe the jurors had read any of the

7  allegedly prejudicial articles in violation of the court's admonition  *People v.*

8  *Adcox*, 47 Cal.3d 207, 252-253 (1988) (denying Adcox's claim of trial court error

9  for failing to sua sponte voir dire the jury regarding statements attributed to the

10 prosecutor in newspaper articles, finding no abuse of discretion as there was no

11 affirmative evidence that any juror had read any of the articles in question, the

12 defense counsel characterized the quotes as "innocuous," and the trial court

13 admonished the jury "not to read any newspapers or listen" to any report

14 connected with the case).  The Warden further assserts competent counsel could

15 decide to rely on a mistrial motion based on the news articles instead of

16 requesting that the jurors be questioned, which might emphasize the articles in

17 the jurors' minds or confirm that Adcox was not harmed.  The Warden concludes

18 that since the news articles were not incurably prejudicial and there is no reason

19 to believe any of the jurors were exposed to prejudicial material, there is no

20 reasonable probability of a different result.

21

22       As above, since the Warden has met their burden of pleading abuse of the

23 writ, Adcox must show some objective factor external to the defense impeded

24 presentation of these claim.  If an external impediment cannot be shown, the

25 failure to raise the claims in an earlier petition can still be excused if Adcox can

26 show that dismissal of the claims will result in a fundamental miscarriage of

1  justice – i.e., affirming the conviction of an innocent person.

2        Adcox presented these claims for the first time in his amended federal

3  petition filed February 28, 2008.  The factual predicates underlying these claims

4  were contained in the transcript of Adcox's trial, defense counsel's files, or local

5  newspaper articles.  Adcox has failed to show his efforts to raise these claims

6  were impeded by an objective factor external to the defense.  Adcox has not

7  shown these claims could not be raised because his appellate counsel was

8  ineffective[3], or due to governmental interference or some other factor external to

9  the defense.  Finally, Adcox has not demonstrated that dismissal of these claims

10  will result in affirming the conviction of an innocent person.

11

12  *Conclusion*

13        Since the government met their burden of pleading abuse of the writ by

14  asserting these claims were not in Adcox's previous habeas petition, the burden

15  shifted to Adcox to show cause and actual prejudice.  Adcox has failed to show

16  cause, or some objective factor external to the defense which impeded the efforts

17  to raise these claims.  Subclaims XX(A)(2)(a), (b), (c)(iii), (d)(i)-(iii) and (g), and

18  (A)(3) to the extent it relies on the above allegations in XX(A)(2), are dismissed

19  under abuse of the writ.

20

21  **Claims Not Presented in Fourth State Habeas Petition**

22        Claim VI (trial counsel's failure to request a special prosecutor due to the

23  hiring of Tillery's counsel Vanover, who had previously negotiated her plea

24  agreement, by the DA's office and his subsequent involvement in Adcox's case)

25

26      [3] This analysis only applies to facts not included in Claim XVI, which is exhausted.

19

1   and Claim XLIV (lack of California jurisdiction in the Stanislaus National Forest)

2   were agreed by the parties to be unexhausted.  Adcox did not include these

3   claims in his fourth state habeas petition filed with the California Supreme Court

4   March 12, 2010.  In light of the failure to present these claims to the state court,

5   they are considered abandoned and are dismissed.

6

7   ORDER:

8        Adcox's motion for stay and abeyance is DENIED.  The parties' agreement

9   regarding the lack of exhaustion of Claims V(A)(6) and XVI, adopted in the

10  March 31, 2009 Exhaustion Order, is erroneous and those claims are exhausted.

11  Claims V(A)(4) and (5) are dismissed as abusive.  Claims XX(A)(2)(a), (b), (c)(iii),

12  (d)(i)-(iii) and (g); XX(A)(3), to the extent it relies on XX(A)(2), are dismissed as

13  abusive.  Claims VI and XLIV are considered abandoned and are dismissed.

14       Adcox's brief of the merits of the remaining claims in his petition is due

15  120 days from the date of this order.  The Warden's opposing brief is due 120

16  days after Adcox's brief is filed, and Adcox's reply brief, if any, is due 90 days

17  after the filing of the Warden's opposition brief.

18

19  IT IS SO ORDERED.

20

21  DATED:    July 1, 2010

22                              /s/ Oliver W. Wanger

23                         Senior United States District Judge

24

25

26

20